Argued and submitted June 29, reversed and remanded October 26, petition for
review denied December 20, 1994 (320 Or 492)

## STATE OF OREGON,
*Appellant,*

*v.*

## STEVEN MARK MILOSEVICH,
*Respondent.*

(10-92-09745A; CA A80779 (Control))

## STATE OF OREGON,
*Appellant,*

*v.*

## NICHOLAS DANIEL MILOSEVICH,
*Respondent.*

(10-92-09745B; CA A80780)

883 P2d 898

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Steven V. Humber, Deputy Public Defender, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

Landau, J., dissenting.

## EDMONDS, J.

In these two cases, consolidated for appeal, the state appeals from an order suppressing evidence found at the defendants' residence. ORS 138.060. The court held that the affidavit supporting the search warrant was legally insufficient. We reverse.

A search warrant was issued for the Eugene residence of both defendants based on the affidavit of a Lane County Deputy Sheriff. The affidavit described the discovery by Forest Service officers of a marijuana "plantation," containing 19 plants.[1] An alarm and camera system were installed to monitor traffic to and from the site. On August 15, 1992, at approximately 8:30 a.m., the alarm was activated. At approximately 9:00 a.m., a United States Forest Service (USFS) officer and an Oregon State Police officer arrived at the site, where they observed and photographed two suspects for approximately one and one-half hours cultivating marijuana.

After the suspects left, a USFS special agent followed their car and arranged to have it stopped to identify the suspects. The car was stopped in Veneta approximately 40 minutes later by a Lane County Sheriff's officer. The officer identified the suspects as Eric Mason and defendant Steven Milosevich. The officer also told the affiant that "he could detect an odor of growing marijuana in and around this vehicle, but could not pinpoint an exact point of origin." The special agent also determined that Mason was the registered owner of the car and traced his address to defendants' residence. Mason's car was later observed parked outside that residence. The special agent also determined that defendant Steven Milosevich "had seven prior arrests for controlled substance violations and one arrest for a weapons violation," and that Mason had two previous arrests for possession of less than one ounce of marijuana.

■ In a marijuana growing case, an affidavit must satisfy two requirements in order to support a search warrant of

---

[1] The plants were scattered in three gardens.

a residence. First, the affidavit must set forth objective obser-
vations sufficient to allow a disinterested magistrate to con-
clude that there is probable cause to believe that there is a
relationship between the people residing on the premises and
the marijuana plants. Second, the affidavit must contain
additional facts to support probable cause to believe that
marijuana, a certain kind of implement of cultivation or
paraphernalia for processing or sale of marijuana is probably
in the building to be searched. *State v. Anspach*, 298 Or 375,
381, 692 P2d 602 (1984). This case involves the application of
the second requirement.

In *State v. Evans*, 119 Or App 44, 849 P2d 539
(1993), we addressed the second requirement. In that case, a
search warrant was issued for the defendants' residence. The
affidavit stated that a special agent had discovered two mari-
juana gardens on government land, approximately two miles
apart, that one of the defendants was seen tending the plants,
and that his address had been traced through the license plate
of the truck he was driving. The residence was at least 35
miles from the gardens. There was no information in the
affidavit about the defendants' past involvement in drug-
related activity. It also contained a statement that it was
within the affiant's knowledge that it was common practice
among marijuana growers to use residences to package har-
vested marijuana for distribution. We said that the affidavit

> "contained no facts about any activity at the home except for
> defendants' living there. *There were no facts indicating that
> defendants had been harvesting or transporting the plants*,
> or that any tools used to care for the plants were taken from
> the home to the site. The officer's recitations of his profes-
> sional experiences provided the only link between the resi-
> dence and the marijuana plants." 119 Or App at 46.
> (Emphasis supplied.)

We held that the officer's professed knowledge of the common
practices of people who grow, distribute and sell marijuana
did not suffice to furnish the missing facts that created
probable cause that the particular residence contained
marijuana.

■     One difference between this case and *State v. Evans,
supra,* is that here, an officer detected "an odor of *growing*
marijuana in and around" Mason's car when it was stopped

after it left the plantation. (Emphasis supplied.) When that fact is considered with the fact that the car had just come from the marijuana plantation, an inference arises that marijuana was being harvested and transported in Mason's car to defendants' residence. Defendants rely on the fact that the affidavit states that there were 19 marijuana plants at the time the officers made their observation and that several days later, an officer accounted for all 19 plants. Moreover, there is nothing in the affidavit to indicate that the two officers observed Mason and defendant harvesting any of the plants. However, the officers arrived at the garden approximately 30 minutes after the alarm was activated and, even after arriving, they remained 35 to 40 yards away. The information relied on by defendants does not negate the inference that some marijuana was put into the car before the officers arrived or while it was out of their sight. The affiant stated that

> "persons who grow marijuana frequently do so in cycles, that it is common for these persons to have a mature grow and then another starter grow in their residence. I know that marijuana grown in outdoor locations is generally harvested then taken to an indoor location to be dried, manicured, weighed and packaged for distribution. It has been my experience that this harvested marijuana is almost always taken to the grower's residence to be processed. The drying of these plants is initiated soon after harvest to avoid damage from mildew."

We hold that when the totality of the facts is considered, including the fact that the odor of growing marijuana emitted from Mason's car and that both occupants had a history of drug involvement,[2] it is sufficient to lead a reasonable person to believe that seizable things would probably be found at defendants' residence.[3]

Reversed and remanded.

---

[2] *See State v. Seven*, 91 Or App 506, 509, 755 P2d 747 (1988).

[3] The dissent says that there are no facts that demonstrate that seizable evidence would be found at the residence of the car's occupants. It ignores the fact that the officer smelled the odor of "growing" marijuana emitting from a car that had just come from a marijuana "plantation" and that was later observed outside the residence of the car's occupants. In the light of those facts and the affiant's experience, there is probable cause to believe that harvested marijuana would be found at the residence. *See State v. Villagran*, 294 Or 404, 415, 657 P2d 1223 (1983).

**LANDAU, J.,** dissenting.

To establish probable cause to search a residence for marijuana and related paraphernalia, a supporting affidavit must satisfy two requirements:

> " 'First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants. * * * [Second,] the affidavit must contain additional facts to support probable cause to believe that marijuana or certain kinds of implements of cultivation or paraphernalia for processing or sale of marijuana are *probably in the building to be searched.*' " *State v. Anspach*, 298 Or 375, 381, 692 P2d 602 (1984). (Emphasis supplied.)

A recent case from this court illustrates what is sufficient to establish the probability that marijuana or other seizable evidence is in the building to be searched. In *State v. Chezem*, 125 Or App 341, 865 P2d 1307 (1993), the affidavit contained reliable information that the defendant was the "cook" for a drug manufacturing enterprise, and that other members of the enterprise were known to perform phases of manufacturing and distribution in their homes. Telephone records indicated frequent recent communications between the defendant's home and the home known to contain the methamphetamine laboratory. The defendant had been seen several times with other participants at the home where a lab was located. One informant had told another that he could obtain the drug from "[the defendant] who lives in Salem" and had accompanied the other informant to the defendant's home. In the light of the evidence that the defendant was part of a larger operation, that other members of the operation actually were known to keep evidence of the operation in their homes, and that one informant had taken another to the defendant's house to make a purchase, we held that there was sufficient evidence to support the magistrate's conclusion that seizable things probably could be found at the defendant's residence also.

Another recent case from this court illustrates what is *not* sufficient to establish the probability that marijuana or other seizable evidence is in the building to be searched. In *State v. Evans*, 119 Or App 44, 849 P2d 539 (1993), the

affidavit stated that the officer knew, based on his experience, that it was "common practice" for those who grow marijuana to keep various drug paraphernalia at their homes, and that, on that basis, it was probable that the defendants, who were observed growing marijuana some 35 miles away from the grow site, probably kept seizable items at their residence. We held that that affidavit was insufficient to establish probable cause that the defendants kept any seizable evidence at their home. We held that neither the presence of the defendants' truck at the growing site, nor the officer's experience, provided the required "additional fact supporting probable cause that *this* particular residence contained any particular evidence." 119 Or App at 47. (Emphasis in original.)

In this case, the majority concludes that, on the basis of (1) an officer's experience that those who grow marijuana generally keep seizable things at their homes, (2) the fact that one defendant was observed at the grow site, and (3) the fact that, during a stop of Mason's car some miles away from defendants' residence, an officer could smell the odor of "growing" marijuana, the warrant to search defendants' home was sufficient. According to the majority, that the officer smelled the odor of marijuana "in and around this vehicle" makes this case different from *Evans* and, therefore, distinguishable from its holding.

The facts stated in the affidavit in no way establish that marijuana or other seizable evidence " 'are probably in the building to be searched.' " *State v. Anspach, supra,* 298 Or at 381. They certainly do not approach what was stated in the affidavit in *Chezem*. In particular, there is no evidence of illegal activity at defendants' home. There is, in fact, no evidence of any activity in defendants' home, except that they lived there.

In my view, this case is indistinguishable from *Evans*. The fact that an officer smelled marijuana "in and around" Mason's vehicle is of no particular significance to me. It demonstrates absolutely nothing concerning the probability that seizable evidence may be found at defendants' *residence*. Perhaps it establishes the probability that marijuana may be found in the car. But the connection between an

odor of marijuana in and around Mason's car and the probability that defendants have drugs or drug paraphernalia at their home eludes me completely.

The majority insists that the connection is established by the officer's testimony that the odor in and around Mason's car was of "growing" marijuana, and that one defendant had been observed at a marijuana "plantation" and that, some hours later, the car ended up at defendants' home. I suppose that, in an attenuated, Rube Goldberg fashion, there is a connection between the odor of "growing" marijuana and defendants' residence. I insist that it does not come close to establishing *probable cause* that drugs or drug paraphernalia would be found *at the home*. Even assuming, for the sake of argument, that the odor of growing marijuana demonstrates that one defendant was harvesting marijuana,[1] it remains something of a mystery how that demonstrates that he transported it to his home.

I dissent.

---

[1] Even that assumption is a bit of a stretch. The officers observed defendant Steven Milosevich and Mason at the "plantation" for an hour and a half and could not testify that they observed either person harvesting marijuana. Moreover, a count of the marijuana plants both before and after the search revealed the same number of plants at that location.