962 P.2d 344

Linda C. TSEU, in her official capacity as Executive Director of the Hawaii Civil Rights Commission, ex relatione Jack HOBBS and Misayo Hobbs, individually, and Jack Hobbs as guardian ad litem for Kenji Hobbs and Tamiko Hobbs, minors, Plaintiffs–Appellees,

v.

Albert JEYTE and Jessie Wheelwright, Defendants–Appellants.

No. 20489.

Supreme Court of Hawai'i.

June 30, 1998.

Reconsideration Denied Aug. 26, 1998.

Perry W. Confalone, Steven B.Jacobson and Stephanie A. Chin, of Torkildson, Katz, Fonseca, Jaffe, Moore & Hetherington, on the briefs, Honolulu, for defendants-appellants.

John Ishihara of Department of Labor and Industrial Relations, Hawai'i Civil Rights Commission, State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellants Albert Jeyte and Jessie Wheelwright appeal from the circuit court's dismissal of their counterclaim against the Hawai'i Civil Rights Commission (HCRC) for negligent investigation and negligent or intentional infliction of emotional distress. On appeal, appellants argue that: (1) the discretionary function exception to the State Tort Liability Act does not bar their claims; and (2) their counterclaim stated claims upon which relief could be granted. We hold that the circuit court erred in dismissing count 1 of appellants' counterclaim alleging negligent investigation.

## I. BACKGROUND

In 1993, Jeyte placed an advertisement in the newspaper seeking applications for tenants for a one-bedroom, one-bath rental cottage. Wheelwright, Jeyte's mother, answered telephone inquiries regarding the cottage and forwarded messages to Jeyte. On July 31, 1993, *ex relatione* plaintiff-counterclaim defendant-appellee Jack Hobbs called to inquire about the rental on behalf of himself, his wife and two children. Wheelwright answered the call and told Hobbs that she did not think that the cottage could accommodate a family of four, but that Hobbs could come and see the property.

Hobbs went to the property and viewed it with other prospective tenants. Jeyte told Hobbs at this time that the property was too small for four persons. Jeyte did not give Hobbs an application. Eventually, Jeyte rented the property to a single male tenant.

Hobbs then filed a complaint with the HCRC. The HCRC conducted an investigation. On February 18, 1994, the HCRC sent appellants a letter informing them that the investigation had determined that there was reasonable cause to believe that they had engaged in unlawful discrimination. This letter stated that the HCRC sought the following relief on behalf of the Hobbs family: (1) $500 for each violation against each complainant; (2) cease and desist the discriminatory practice; and (3) that appellants publish, at their expense "the results of the [HCRC's] investigation in a notice provided by the

[HCRC] in at least one newspaper published in the State of Hawaii[.]"

Appellants met with the HCRC in an attempt to reach an agreement, but were unsuccessful in resolving the issues. Appellants then elected to pursue a court action rather than an administrative hearing.[1] On May 3, 1994, the HCRC filed a complaint against appellants alleging that they had committed an unlawful discriminatory practice. On May 19, 1994, appellants filed an answer and counterclaim. In their counterclaim, appellants alleged two causes of action: (1) negligent investigation; and (2) intentional and/or negligent infliction of emotional distress. Count 2 was alleged solely in relation to Wheelwright. The basis of count 1 was that the HCRC negligently failed to recognize that the housing code for the City and County of Honolulu made it unlawful to rent the cottage to four persons because of insufficient floor area. Therefore, the filing of the complaint was meritless and caused damage to appellants for emotional distress, embarrassment, humiliation, and legal expenses to defend against the action.

Two bases were alleged in support of Wheelwright's intentional and/or negligent infliction of emotional distress claims. These were: (1) that Wheelwright was not properly a party to the action because she did not participate in any discrimination; and (2) that the letter demanding monetary damages and that she publish a notice in the newspaper that she was an "unlawful discriminator" was outrageous, unreasonable, and calculated to intimidate, coerce, embarrass, and hurt Wheelwright.

On June 7, 1994, the HCRC filed a motion to dismiss the counterclaim. In its motion, HCRC argued that: (1) the claims were barred either by the State Tort Liability Act's discretionary function exception or because alternative remedies existed; (2) the negligent investigation claim was a novel legal theory that should not be cognizable against the State; and (3) the counterclaim failed to state a claim on which relief could be granted because there was no duty breached by the HCRC that was owing to appellants.

After hearing on June 23, 1994, the circuit court granted the motion to dismiss. The circuit court did not identify, either orally in the hearing or in the written order dismissing the counterclaim, the grounds on which it relied in dismissing the counterclaim.

During the course of subsequent proceedings, appellants filed three motions for summary judgment, all of which were denied. On January 17, 1997, the parties entered into a stipulation to dismiss the HCRC's complaint with prejudice. Final judgment was entered in favor of appellants, and they were awarded $2,500 in costs against the HCRC. This stipulation was without prejudice to appellants' right to appeal the dismissal of their counterclaim. Appellants timely filed an appeal of the circuit court's dismissal of their counterclaim.

## II. DISCUSSION

### A. Appellants' claims are not barred by the discretionary function exception to the State Tort Liability Act.

Hawai'i Revised Statutes (HRS) Chapter 662, the State Tort Liability Act, sets out the parameters under which the State of Hawai'i waives its sovereign immunity from suit. HRS § 662–2 (1993) provides that "[t]he State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." HRS § 662–15(1) (1993) provides that there is an exception to this waiver for

[a]ny claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the *exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused* [.]

1. HRS § 515–9(3) (1993) provides that, in real property discrimination cases, "an election may be made to file a civil action in lieu of an administrative hearing."

(Emphasis added.) The highlighted portion of this statutory section is commonly known as the "discretionary function exception." This case requires us to evaluate the parameters of the discretionary function exception and determine whether it acts to bar appellants' counterclaims.

In determining whether the discretionary function exception applies,

> [t]his court has looked to whether broad policy considerations were involved and has compared and distinguished discretionary functions from operational level decisions which involve routine everyday matters.... Sovereign immunity for the performance of discretionary functions is retained to protect the decision-making processes of state officials and employees *which require evaluation of broad public policies.*

*Nakahira v. State,* 71 Haw. 581, 583, 799 P.2d 959, 961, *reconsideration denied,* 71 Haw. 665, 833 P.2d 899 (1990) (citations omitted) (emphasis added). "The demarcation line ... between a discretionary function and an operational level activity is not so easily drawn, and the determination, therefore, must ordinarily be made in the factual context in which the issue has arisen." *Julius Rothschild & Co. v. State,* 66 Haw. 76, 80, 655 P.2d 877, 881 (1982).

■ This court discussed the purposes of the discretionary function exception in *Breed v. Shaner,* 57 Haw. 656, 562 P.2d 436 (1977), as follows:

> The [discretionary function] exception makes clear that the act is not intended to provide a vehicle to review policy decisions by state officials or employees in the form of a negligence suit. This rule recognizes the separate powers and functions of the legislative and executive branches of state government and protects them from any attempted disturbance through the courts.

*Id.* at 666, 562 P.2d at 442. Thus, in order to determine whether an action of state officials falls within the discretionary function exception, our precedents mandate that we determine whether the challenged action involves the effectuation of a "broad public policy", on the one hand, or routine, "operational level activity" on the other.

In *Julius Rothschild, supra,* we held that the State's decision not to reconstruct the Moanalua Stream Bridge to conform to a fifty-year flood criterion constituted a discretionary function, involving "a weighing of priorities at the higher levels of government, and ... surely entail[ing] evaluations based on financial, political and economic considerations." *Id.* at 80–81, 655 P.2d at 881. In *Nakahira,* we held that the decision of the Hawai'i Army National Guard to adopt a program under which non-aviator personnel could be certified to conduct "ground run-ups" of helicopters was a discretionary function; however, we also held that "implementation of the training of the non-aviator personnel is not a discretionary function[.]" 71 Haw. at 586, 799 P.2d at 962.

With these precedents in mind, we now turn to the facts of the instant appeal. The HCRC is an administrative agency of the State of Hawai'i, established by HRS Chapter 368. HRS § 368–3 (1993) provides that the powers and functions of the commission include, *inter alia:*

> (1) To receive, investigate, and conciliate complaints alleging any unlawful discriminatory practice ... and conduct proceedings on complaints alleging unlawful practices where conciliatory efforts are inappropriate or unsuccessful;
>
> (2) To hold hearings and make inquiries, as it deems necessary, to carry out properly its functions and powers[;]
>
> (3) To commence civil action in circuit court to seek appropriate relief[.]

Appellants' counterclaim stated, in pertinent part, that

> 2. [HCRC] is obligated to investigate complaints of unlawful discrimination in a manner which is neutral, fair, unbiased, competent and complete. In this regard, the [HCRC] is obligated to investigate and determine the applicability of all defenses raised during the investigation or during conciliation efforts and to exercise due care in the enforcement of statutes and regulations under its jurisdiction.

The gravamen of Appellants' counterclaim is that the HCRC negligently breached its duty of due care by failing to recognize that the

governing ordinances of the City and County of Honolulu housing code barred the HCRC's action.

■ The HCRC argues that

the conduct of an investigation and the reasonable cause determination are inherently discretionary in nature.... In making the reasonable cause determination, the Executive Director is deciding important issues of public policy.... By considering and weighing broad public policies ... such as protecting families with children from housing discrimination and limiting the adverse effects of overly-restrictive occupancy limits in the housing market upon families with children, the Executive Director is exercising discretion. Thus, the investigation and reasonable cause determination are discretionary functions[.]

We disagree with the HCRC. The investigation of complaints is one of the basic functions of the HCRC. It is part of the routine, everyday operation of the HCRC. Based on our prior precedents, the investigation of a complaint does not entail a broad policy decision immune from suit under the discretionary function exception.

Both the HCRC and the State of Hawai‘i, as *amicus curiae,* cite to the United States Supreme Court's decision in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), in support of the argument that the HCRC's investigation entails a discretionary function. This court has never adopted the reasoning in *Gaubert,* and it would be directly contrary to our previous holdings on the discretionary function exception under Hawai‘i law to do so. Therefore, reliance on *Gaubert* is misplaced.

.The *Gaubert* court, interpreting the Federal Tort Claims Act's discretionary function exception [2] ruled that

if a regulation allows the employee discretion, the very existence of the regulation

creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.... When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Id.* at 324, 111 S.Ct. 1267. Following *Gaubert,* the federal government has been held to be immune from liability for negligence in the investigation of a complaint under the discretionary function exception. *See Crenshaw v. United States,* 959 F.Supp. 399 (S.D.Tex.1997).

In *Crenshaw,* the claim was made that personnel of the National Aeronautics and Space Administration (NASA) were negligent in conducting an investigation of potential fraudulent practices to secure federal contracts. In *Crenshaw,* two undercover agents of the Federal Bureau of Investigation, working under the direction of NASA, represented themselves to the plaintiff as officers of a fictional company. The agents convinced the plaintiff to tender a bid proposal to various companies in regards to a fictional product supposedly being developed for submission to NASA. The agents made various suggestions to plaintiff that he could secure favorable treatment by acting illegally. Plaintiff refused to engage in any wrongdoing.

After learning of the attempted deception, Plaintiff filed a complaint for negligent investigation, among other causes of action. The *Crenshaw* court applied the *Gaubert* analysis as follows:

Under the facts in Plaintiff's complaint, it is clear that the actions taken by the law enforcement agents involved an element of judgment or choice. There is no federal statute or regulation that scripts the interactions between law enforcement agents

---

2. The statute provides that the federal government does not waive liability for

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

and suspect during undercover operations. The agents involved in this case utilized their own judgment at every stage of the sting operation. Furthermore, it is clear that the discretion exercised by these law enforcement agents while conducting the investigation was guided by public policy considerations. In making decisions related to the investigation, the agents were concerned with obtaining evidence of illegal activities against Mr. Crenshaw. Their decisions to take or refrain from certain actions were controlled by their desire to obtain this evidence. Obviously, this objective correlates with the public policy goal of punishing and deterring those who violate federal laws.

959 F.Supp. at 402. Therefore, the *Crenshaw* court held that the discretionary function exception applied and that the plaintiff's claim was barred by sovereign immunity. ■■■ We believe that the analysis in *Gaubert* does not provide sufficient protection to citizens injured by the actions of government employees. Adoption of the *Gaubert* standard would run directly contrary to our past holdings that the discretionary function exception did not apply to the act of designing a highway, *Breed v. Shaner*, *supra*, the placement of road signs and stripings, *Rogers v. State*, 51 Haw. 293, 459 P.2d 378 (1969), or the maintenance of drainage culverts, *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970). We reaffirm our holdings in, *inter alia*, *Breed, Julius Rothschild*, and *Nakahira* and hold that the discretionary function exception is limited to situations in which the government agent is engaged in the effectuation of "broad public policy." The investigation of a complaint by the HCRC, in and of itself, does not involve such considerations. We therefore hold that the counterclaim for negligence in the performance of the investigation is not barred by sovereign immunity.

■■■ Wheelwright's counterclaim for negligent and/or intentional infliction of emotional distress is likewise not barred by sovereign immunity, although we hold *infra* that it was properly dismissed for failure to state a claim. Wheelwright's claim is based on the alleged frivolousness of the legal action

against her and the content of the demand letter sent to her by the HCRC. The acts of investigating the complaint, instituting suit based on a finding of reasonable cause, and sending a demand letter are part of the routine operations of the HCRC and do not involve the type of broad policy considerations encompassed within the discretionary function exception. Therefore, we hold that Wheelwright's counterclaim (Count 2) is not barred by the discretionary function exception.

## B. Appellants' counterclaim stated a claim for negligent investigation.

"Though pleadings should be construed liberally and not technically and a motion to dismiss for failure to state a claim should rarely be granted, a complaint may be dismissed if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief." *Mendes v. Hawai'i Ins. Guar. Ass'n*, 87 Hawai'i 14, 17, 950 P.2d 1214, 1217 (1998) (citation omitted).

■■■ . Appellants' counterclaim for negligent investigation alleged that:

3. On or about August 27, 1993, Counterclaimant Albert Jeyte, acting *pro se*, informed the Commission in writing that the cottage at issue was too small to rent to four people and that an occupancy limits [sic] which prohibit rental of the cottage to four persons was reasonable and not discriminatory. The Commission ignored this obvious defense and found "reasonable cause" to conclude that the Counterclaimants had committed housing discrimination on the basis of familial status.

4. After the Commission asserted reasonable cause to conclude that discrimination had occurred, Defendants retained counsel. On or about March 9, 1994, counsel for Defendants met with counsel for the Commission in a "conciliation" meeting. Counsel for Counterclaimants referred counsel for the Commission directly to the Housing Code for the City and County of Honolulu which was enacted to prohibit overcrowding in rental premises. Counsel for Counterclaimants specifically cited Code Section 27–4.3(b) which governs occupancy limits

and superficial floor area requirements for rooms used for sleeping purposes. Counsel for Counterclaimants pointed out that rental of the subject premises for occupancy by four persons would violate the express provisions of the Housing Code and that compliance with the Housing Code is expressly recognized as a defense in the Commission's own regulations governing discrimination in real property transactions. Reference Administrative Rule 12–46–301 *et seq.*

We hold that, by alleging that the HCRC ignored governing law that provided a clear defense to the reasonable cause determination that Appellants engaged in unlawful discrimination, Appellants stated a claim for negligent investigation for which relief could be granted.

HCRC argues that this is a novel cause of action that should not be recognized. We disagree. We construe the counterclaim as a common law tort action for negligence.

> [T]he elements of a cause of action founded on negligence are:
>
>   1. A duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
>   2. A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
>   3. A reasonably close causal connection between the conduct and the resulting injury and[;]
>
>   4. Actual loss or damage resulting to the interests of another.

*Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987) (citations, ellipsis points, and internal brackets omitted).

■ The HCRC is subject to a duty to follow its own administrative rules, utilizing reasonable care, and it is potentially negligent to institute legal action if the basis for relief is unlawful. The HCRC is obligated to recognize the governing statutes of other state agencies. The administrative rules promulgated by the HCRC provide that:

> It is a discriminatory practice for an owner or any person engaging in a real estate transaction ... to:.... (3) Impose occupancy limits on a housing accommodation sought by a person because of familial status, *unless such limits are justified by establishing a business necessity;*
>
>   *Example:* A person with children seeking a housing accommodation cannot be denied the accommodation on the basis of an occupancy limit unless it is based upon a compelling and well established public purpose, *such as a county building code established to promote public safety* [.]

HAR § 12–46–307 (emphasis added).

The Housing Code of the City and County of Honolulu provides in pertinent part that:

> [Sec. 27–4.3(b)] Superficial Floor Area. Every dwelling unit shall have at least one room which shall have not less than 150 square feet of superficial floor area. Other habitable rooms except kitchens shall have a superficial floor area of not less than 70 square feet. Where more than two persons occupy a room used for sleeping purposes the required floor area shall be increased at the rate of 50 square feet for each occupant in excess of two.
>
> [Sec. 27–9.1 Substandard Buildings Definition]
>
>   (b) Inadequate sanitation shall include but·not be limited to the following: .... (8) room and space dimensions less than required by this code;....
>
>   (o) Improper Occupancy. All buildings or portions thereof occupied for ... sleeping ... purposes which were not designed or intended to be used for such occupancies.

Appellants submitted a floor plan for the rental cottage showing that the single bedroom has a floor area of 112 square feet. Under the plain language of the Housing Code, a bedroom for four persons must have a minimum floor area of 170 square feet. Based on that plain language, Appellants raised a potentially legitimate defense that placing four persons in the single bedroom would violate the provisions of the code.[3]

---

3. Appellants subsequently raised State of Hawaiʻi

Department of Health regulation HAR § 11–14–

Therefore, it may have been negligent for the HCRC to bring legal action clearly barred by its own administrative rules; which provide that violation of a county building code justifies an occupancy limit.[4]

We do not, by this opinion, intend to imply that all instances in which there is a valid defense to a complaint render the filing of a complaint actionable negligence. However, there exists a duty of reasonable care in the exercise of statutorily granted authority, and it was erroneous to grant a motion to dismiss the counterclaim. We are unable to say that there is no set of facts under which appellants could show that it was negligent for the HCRC to bring the complaint in violation of its own administrative regulations.

## C. The court properly dismissed Appellants' counterclaim for negligent/intentional infliction of emotional distress for failure to state a claim.

Appellants' second count alleged a counterclaim for negligent and/or intentional infliction of emotional distress. The counterclaim alleged that:

9. The allegations against Mrs. Wheelwright are entirely meritless. . . .

10. Notwithstanding Mrs. Wheelwright's innocence, [HCRC] forwarded by certified mail a letter to Mrs. Wheelwright demanding that she pay to the Claimants thousands of dollars in "damages" and that Mrs. Wheelwright pay for an advertisement in a general circulation newspaper in Honolulu stating that she was an unlawful discriminator, thus demeaning, humiliating and embarrassing herself in the community.

11. The allegations against Mrs. Wheelwright are abusive, frivolous, unreasonable and intentionally calculated to intimidate and coerce Mrs. Wheelwright into accepting an unwarranted settlement or public conciliation agreement and expanding the fair housing law and the powers of the [HCRC] beyond that intended by the legislature.

12. The above acts were intentional, outrageous, unreasonable and calculated to intimidate, coerce, embarrass and hurt Mrs. Wheelwright. [HCRC] knew or should have known that such said acts would cause Mrs. Wheelwright severe emotional distress. Mrs. Wheelwright suffered damages in an amount to be proven at trial.

### 1. Negligent Infliction of Emotional Distress

The independent tort of negligent infliction of emotional distress exists under circumstances where "a reasonable man [or woman], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Masaki v. General Motors Corp.*, 71 Haw. 1, 17, 780 P.2d 566, 579, *reconsideration denied*, 71 Haw. 664, 833 P.2d 899 (1989) (quoting *Rodrigues v. State*, 52 Haw. 156, 173–74, 472 P.2d 509, 520 (1970)). *See also Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 361, 944 P.2d 1279, 1304 (1997). "[R]ecovery for negligent infliction of emotional distress by one not physically injured is generally permitted only when there is 'some physical injury to property or a person' resulting from the defendant's conduct.'" *Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 465–66, 879 P.2d 1037, 1048–49 (1994) (quoting *Chedester v. Stecker*, 64 Haw. 464, 468, 643 P.2d 532, 535 (1982)).

In the instant case, Wheelwright's counterclaim is devoid of any allegation of physical injury to herself or another as a result of the conduct of the HCRC. More-

5(e)(6) governing access to bathrooms in support of their counterclaim. However, because this regulation was not raised prior to the circuit court's grant of HCRC's motion to dismiss, we do not address it herein.

4. The HCRC asserts that placing a family of four persons in the cottage would not violate the Housing Code because the City and County does not strictly enforce its regulations. The HCRC, on appeal, points to affidavits, submitted by county officials, which were not submitted to the circuit court prior to resolution of the motion to dismiss. The consideration of these affidavits is an evidentiary matter for the circuit court, and, because the counterclaim was dismissed, there is no ruling by the circuit court on the merits of HCRC's claim. Therefore, it would be improper for us to rule on this matter at this stage in the proceedings.

over, the conduct complained of does not, as a matter of law, meet the standard for maintaining an action for negligent infliction of emotional distress as set out in *Masaki*. Wheelwright's counterclaim is based on (1) an allegation that the suit was unwarranted and (2) that the contents of the letter proposing a conciliation settlement were distressing. Neither of these allegations can form the predicate basis for a suit for negligent infliction of emotional distress.

### 2. *Intentional Infliction of Emotional Distress*

> Recovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were "unreasonable." An act is "unreasonable" if it is " 'without just cause or excuse and beyond all bounds of decency[.]' " In other words, the act complained of must be "outrageous," as that term is employed in the Restatement (Second) of Torts § 46 (1965).

*Dunlea v. Dappen*, 83 Hawai'i 28, 38, 924 P.2d 196, 206 (1996) (quoting *Ross*, 76 Hawai'i at 465, 879 P.2d at 1048) (citations omitted) (brackets in original). Restatement (Second) of Torts § 46 comment d sets forth the standard for finding liability for intentional infliction of emotional distress, in pertinent part, as: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

▮ The HCRC's act in sending an official letter offering to settle the complaint if Wheelwright paid monetary damages and took out an advertisement in the newspaper is not outrageous. The HCRC's obvious purpose in doing so, namely, to recompense an alleged victim of unlawful discrimination and deter further conduct, was—in itself—legitimate. It therefore cannot be considered outrageous conduct. There is no set of facts under which the allegations in Count 2 of the counterclaim could support a finding of liability for intentional infliction of emotional distress. Therefore the circuit court properly dismissed it.

### III. CONCLUSION

For the foregoing reasons, we vacate the order of the circuit court dismissing Count 1 of appellants' counterclaim and remand for further proceedings. We affirm the dismissal of Wheelwright's counterclaim for negligent and/or intentional infliction of emotional distress (Count 2).

### MOTION FOR RECONSIDERATION

Upon consideration of plaintiff-counterclaim defendant-appellee Hawai'i Civil Rights Commission's (HCRC) motion for reconsideration and affidavits in support thereof, it appears that the HCRC misapprehends the scope of our opinion. As stated on multiple occasions in the opinion (at 350–351), the cause of action which may exist against the HCRC is based upon a duty to follow its own administrative regulations. This is not a novel cause of action. *See, e.g., Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (reversing order dismissing plaintiffs' claims that the National Institute of Health violated statutory and regulatory provisions in approving vaccine for public use). The holding of the opinion does not extend to private litigants, nor does it abolish the common-law torts of malicious prosecution and abuse of process.

The State Tort Liability Act provides that the State shall not be liable for "[a]ny claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation[.]" HRS § 662–15(1) (1993). The clear corollary to this section is that the State does *not* waive liability for the acts or omissions of state employees *not* exercising due care in the execution of a statute or regulation.

The remaining arguments raised by the HCRC do not establish a point of law or fact which this court "has overlooked or misapprehended" pursuant to the standard for reconsideration set forth in Hawai'i Rules of Appellate Procedure Rule 40(b). Therefore,

IT IS HEREBY ORDERED that the HCRC's motion to reconsider is denied.