WENDY ROGERS AND RICHARD ROGERS, JR., MINORS, BY RICHARD ROGERS, THEIR GUARD-IAN AD LITEM, RICHARD ROGERS AND PENEL-OPE ROGERS *v.* STATE OF HAWAII AND ETHEL KAYA.

No. 4794.

September 26, 1969.

Richardson, C.J., Marumoto, Abe, Levinson, JJ., and Circuit Judge Lum in Place of Kobayashi, J., Disqualified.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the State of Hawaii from a judgment against it in an action brought in the first circuit court by Richard Rogers, his wife, and two minor children, to recover damages for injuries they suffered when

an automobile which Rogers was driving collided with an automobile driven by Ethel Kaya. The judgment was in the aggregate sum of $70,400, of which $4,400 was for Rogers, $65,000 was for his wife, and $1,000 was for his children. In the action, Ethel Kaya was also sued, but the circuit court absolved her of any liability.

The accident occurred on January 7, 1962, on Kamehameha Highway, about three-tenths of a mile toward Haleiwa from the junction of Whitmore Avenue in Wahiawa, where Kamehameha Highway bears to the right and continues to Haleiwa, and Kaukonahua Road slants into it on the left to form a "Y" intersection.

At the time of the accident, Rogers was driving his wife and children from his quarters in Radford Terrace to Waimea Falls on a family picnic. Rogers was a navy officer. He had been on Oahu only three months, and had not been to Waimea Falls before. From a map, he knew that Waimea Falls was generally in a westerly direction from Radford Terrace, but did not know exactly which road to take, or the name of the road which led to his destination. When he came to the intersection in question, instead of going to the right to continue on Kamehameha Highway, he turned to the left to enter Kaukonahua Road. At that moment, Ethel Kaya, who was on her way from Punaluu to Pearl City by way of Haleiwa, entered the intersection, and the collision took place. Ethel Kaya was familiar with the road pattern at the intersection. Because Rogers gave no contrary signal, she assumed that he would continue on Kamehameha Highway toward Haleiwa. When she saw him turning to his left, it was too late for her to avoid a collision.

Rogers turned to the left because he was misled into thinking that the main highway went in that direction, by the surface appearance of the roads, center line stripings,

road signs, and route numbers, which he observed as he approached the intersection.

Kamehameha Highway between Wahiawa and the intersection was a part of Route 80. Beyond the intersection, Kamehameha Highway was designated as Route 809, instead of being continued as Route 80. Route 80 turned left into Kaukonahua Road. Route numbers with three digits are secondary road designations. Also, beyond the intersection, Kamehameha Highway was newly paved, and appeared darker than the stretch to the intersection. The stretch to the intersection presented a surface appearance similar to that of Kaukonahua Road. Another factor which made it appear as though the main highway went to the left was that the center line striping on the stretch, which curved to the left, was clearly visible, while the striping which curved to the right was faded and hardly visible. Within a distance of about 250 feet from the intersection, there were three road signs, namely, a "Y" sign, a sign reading "TURN LEFT WITH CAUTION," and a sign indicating that Route 80 was to the left and Route 809 was to the right. These signs were placed too near the intersection to be of assistance to a motorist who. was driving over the stretch for the first time.

The circuit court found that the State was negligent in creating and permitting the conditions stated above to exist, and concluded that such negligence was the sole proximate cause of the collision. From the evidence in the record, we cannot say that the finding is erroneous. That being the case, the only matter which requires our consideration on this appeal is the State's contention that its negligence in locating the road signs and restriping the center lines was not actionable under HRS § 662-15(1), which excepts from the State Tort Liability Act "[a]ny claim based upon * * * the exercise or performance or the failure to exercise or perform a discretionary function or

duty on the part of a state officer or employee, whether or not the discretion involved be abused." This contention was made with regard to the circuit court's conclusion of law that the State's negligence was not the type of negligence excepted in HRS § 662-15(1).

The State's position in connection with its contention is that discretion on the part of a State employee is involved in the placement of road signs and restriping of pavements in that road signs are placed after the district maintenance engineer has made a visual observation and has determined where and how they are to be placed, and center lines are restriped after the engineer has taken into consideration such factors as the geographical area involved, the amount of rain, and the volume of traffic in the area.

To sanction the State's position is to emasculate the State Tort Liability Act, for as stated in *Swanson* v. *United States*, 229 F. Supp. 217, 219 (N.D.Cal. 1964), "In a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion."

The State Tort Liability Act is modeled after the Federal Tort Claims Act, 60 Stat. 842 (1946). The federal act is liberally construed to effectuate its purpose. That purpose was stated in *Indian Towing Co.* v. *United States*, 350 U.S. 61, 68 (1955), to be "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws." In *United States* v. *Yellow Cab Co.*, 340 U.S. 543, 550 (1951), the court stated that, in view of the clearly defined purpose of the act as a whole, "[i]t is inconsistent to whittle it down by refinements."

The State relies on *Mid-Central Fish Co.* v. *United*

*States,* 112 F. Supp. 792 (W.D.Mo. 1953), *aff'd,* 210 F.2d 263 (8th Cir. 1954), *cert. denied,* 347 U.S. 967 (1954), and *Dalehite* v. *United States,* 346 U.S. 15 (1953). Neither is apposite.

*Mid-Central* was decided on the basis that the activities upon which the claims were based were governmental and not private in nature. Since *Indian Towing Co.* v. *United States, supra,* the distinction between governmental activity and private activity is not a valid basis for the application of discretionary function exception.

*Dalehite* does not go to the extent that the State contends. True, in that case, the court sustained governmental immunity. However, in doing so, it stated, at page 42, that the decisions held culpable in that case were made "at a planning rather than operational level." Subsequent decisions in the federal courts have adopted the view that acts done in accordance with operational level decisions do not come within the discretionary function exception. *Indian Towing Co.* v. *United States, supra; American Exchange Bank of Madison* v. *United States,* 257 F.2d 938 (1958); *United States* v. *Hunsucker,* 314 F.2d 98 (9th Cir. 1962).

In *Indian Towing Co.,* the acts of negligence which were deemed to have been done at an operational level were the failure of responsible coast guard personnel to check the sun relay system, battery, and electrical connections at a lighthouse, and their failure to repair the light or give warning that the light was not operating. In *American Exchange Bank,* the government's negligence lay in its failure to provide handrails at a post office building, the court holding that the decision to construct a post office building involved discretion but the omission to install handrails was an operational level act. In *Hunsucker,* the act held to have been done at an operational level was the construction of a drainage and sewage dis-

posal system pursuant to a planning level decision to activate an air force base.

None of the cases mentioned above gave a precise definition as to what is meant by operational level acts. However, we may draw from the decisions in those cases, and others involving the discretionary function exception, a conclusion that operational level acts are those which concern routine, everyday matters, not requiring evaluation of broad policy factors. *Swanson* v. *United States, supra.*

Here, such matters as the kinds of road signs to place and where to place them, and which center line stripings to repaint and when to repaint them, did not require evaluation of policies but involved implementation of decisions made in everyday operation of governmental affairs. Consequently, the circuit court did not err in holding that the State's negligence in this case did not come within the discretionary function exception.

Affirmed.

*William H. Yim,* Deputy Attorney General (*Bert T. Kobayashi,* Attorney General, *James T. Oyama* and *Douglas S. Hasegawa,* Deputy Attorneys General), with him on the briefs, for State of Hawaii, appellant.

*James F. Ventura* (*Ronald D. Libkuman* with him on the brief, *Libkuman, Shimabukuro & Ventura* of counsel) for appellees.