MAGDALENA MARIA BREED, a minor, by her Next Friend, ANTONIUS MARIA BREED, and ANTONIUS MARIA BREED, Individually, Plaintiffs-Appellants, *v.* STEVEN SHANER, FRANK SHANER, SHERRY HARRIS, COUNTY OF HAWAII, and JOHN DOES 4 through 15, Defendants-Appellees

NO. 5736

APRIL 1, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA AND
KIDWELL, JJ., AND CIRCUIT JUDGE KATO
IN PLACE OF MENOR, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

Plaintiffs Magdalena Maria Breed, a minor, by her next friend, Antonius Maria Breed, and Antonius Maria Breed, individually, (plaintiffs) brought an action for damages suffered by Magdalena Maria Breed in an automobile accident against Steven Shaner, Frank Shaner, Sherry Harris (Harris), State of Hawaii (State), County of Hawaii (County) and 12 John Does. The State and County cross-claimed against each other. Defendants Steven Shaner, Frank Shaner and Sherry Harris were dismissed by stipulation. Upon pretrial motions, trial court ordered any claim that may be against the County be heard by the Court without a jury; it subsequently granted the County summary judgment against plaintiffs' complaint and State's cross-claim, and the State partial summary judgment. Plaintiffs were granted interlocutory appeal from these orders. We reverse.

### ISSUES

1. Is the County of Hawaii entitled to a non-jury trial under Hawaii Revised Statutes § 662-5?

2. Does the pre-accident transfer of jurisdiction by the County of Hawaii to the State of Hawaii of the portion of the highway here in question bar a finding of liability against the County as a matter of law?

3. Is the State of Hawaii exempted from liability as a matter of law for the design of the highway here in question, under the discretionary function exception to the State Tort Liability Act, HRS § 662-15(1)?

STATEMENT OF THE CASE

On August 29, 1970, plaintiff Magdalena Maria Breed (Ms. Breed) was a passenger, along with defendant Steven Shaner, in a motor vehicle being driven by defendant Harris. They were traveling from Kona towards Waimea, County of Hawaii, Hawaii, on a public road known as Mamalahoa Highway, Route 19D. Approximately 9.3 miles from the Waimea Police Station the vehicle went out of control and turned over. Ms. Breed sustained injuries from the accident. The portion of the highway upon which the accident occurred will be referred to as "highway".

A letter dated January 16, 1970, from the Chief of Police, County of Hawaii, to Charles L. Schuster, Hawaii District Engineer, Department of Transportation, Highways Division (Mr. Schuster), states in part:

> Our records show that there have been 17 accidents on Route 19-D, about 9.3 miles Kona from the Waimea Police Station from January, 1967, to this date.

> This is the first curve after coming off the wide and improved section of the Keaumoku stretch from Kona going towards Waimea.

> In the 17 accidents, two persons were killed and 27 were injured. Five accidents were property damage only accidents, and two classified as night time accidents.

> All of the accidents occurred in about the same manner. They were all going in the Waimea direction and either ran off the road or overturned at the curve.

. . . .

Both the County and the State acknowledge that the highway was hazardous at the time of the accident.

There is no evidence indicating who originally designed the highway when it was first constructed in the early 1900's. However, the County carried responsibilities for the highway from the time it was built until June 30, 1969. During that period it had the authority to realign the highway. On July 1,

1969, the State accepted jurisdiction of the highway and has repaired and maintained it since.

The record shows that both the State and County made improvements to the segment of road which includes the area on which the accident occurred. During the early 1930's the highway was designated as part of the Federal-Aid Highway system. Prior to 1938 the Territorial Highway Department proposed realignment of the road and the plan was partially implemented in 1938 and 1953. However, the improvements proposed for the section of the highway involved here were never carried out. The highway was resurfaced under State contract in 1968.[1] After the transfer of jurisdiction, Mr. Schuster recommended realignment of the highway to the chief engineer for the Highways Division.

The State contends that prior to July 1, 1969, there existed no authority to prevent the County from improving the highway. The Hawaii County Department of Public Works could have submitted a project proposal on its own initiative. In 1968 the Hawaii County Council requested an estimate for realigning the highway from the County Department of Public Works.

Previously, in 1966, the County performed road construction on another part of the road that was transferred to the State in 1969. The County road department flattened out a portion of the road.

The legal ownership of the highway is in dispute. The County contends that the State acquired ownership by virtue of the July 1, 1969, transfer of jurisdiction. The State maintains that the ownership of the highway is not established, though conceding that it acquired the responsibility to repair and maintain the road after the July 1, 1969, transfer of jurisdiction.

---

[1] The State's authority to enter into a contract to resurface the road prior to July 1, 1969, is explained by Mr. Schuster, who was deposed by plaintiffs for the State. Plaintiffs' counsel asked,

Q. And again I couldn't understand why the State would be administering a contract to resurface the road in 1968 when control of the road or jurisdiction of the road didn't pass to the State until July 1, 1969.

A. Because the Legislature mandated it.

OPINION

I. IS THE COUNTY OF HAWAII ENTITLED TO A NON-JURY TRIAL UNDER HAWAII REVISED STATUTES § 662-5?

The trial court ordered the claims against the County to be heard without a jury pursuant to the County's motion on the theory that *Salavea v. City and County of Honolulu*, 55 Haw. 216, 517 P.2d 51 (1973), extended the scope of the State Tort Liability Act, HRS Chapter 662, to the County. Since the entry of the order this court decided *Orso v. City and County of Honolulu*, 56 Haw. 241, 534 P.2d 489 (1975), which limited the holding of *Salavea* to the applicability of HRS § 662-4, the statute of limitations provision, to the City and County of Honolulu. *Orso* is dispositive of the issue presented here; *Salavea* is not authority to support a total extension of the State Tort Liability Act to the County.

II. DOES THE PRE-ACCIDENT TRANSFER OF JURISDICTION BY THE COUNTY OF HAWAII TO THE STATE OF HAWAII OF THE HIGHWAY HERE IN QUESTION BAR A FINDING OF LIABILITY AGAINST THE COUNTY AS A MATTER OF LAW?

Plaintiffs alleged in their amended complaint that ". . . County of Hawaii negligently designed, constructed, maintained and inspected and/or [is] otherwise responsible for the road, highway and areas adjacent thereto in the vicinity of where the . . . accident occurred." The trial court apparently accepted the County's contention that the transfer of jurisdiction of the highway to the State, effective July 1, 1969, established a bar for the County from any liability for the design, construction, maintenance, inspection or other responsibility it may have had for the highway. We are of the opinion that the record does show that there is a genuine issue as to a material fact and that the County is not entitled to judgment as a matter of law. *Technicolor, Inc. v. Traeger*, 57 Haw. 113, 551 P.2d 163 (1976); *Gum v. Nakamura*, 57 Haw. 39, 549 P.2d 471 (1976).

The test to be applied by this court on review of summary judgment was stated in *Technicolor, Inc. v. Traeger, supra*, at 118-19, 551 P.2d at 168, as follows:

". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions, and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. [Citations omitted.] Further, in considering the validity of the granting of summary judgment under H.R.C.P. Rule 56(c), the appellate court must determine whether any genuine issue as to a material fact was raised and, if not raised, whether the moving party was entitled to judgment as a matter of law." [Citation omitted.]

The existence of any duties in the County for the negligent design, construction, maintenance or inspection of the highway prior to July 1, 1969, depends upon the extent of authority and control the County exercised over the highway. *Levy v. Kimball,* 50 Haw. 497, 443 P.2d 142 (1968); *see In re Taxes Victoria Ward,* 33 Haw. 235 (1934). Taking the facts in the light most favorable to the plaintiffs and the State, the record shows that the County exercised sufficient control and authority over the highway to raise a question of its liability for the dangerous nature of the road. The County was responsible for general repair and maintenance of the highway. It had the authority to realign the highway. In 1966 the County improved the grade of another part of the same road transferred to the State in 1969. Subsequently, the Hawaii County Department of Public Works prepared a cost estimate for the realignment of the highway in 1968 at the request of the Hawaii County Council.

The designation of the highway as part of the Federal-Aid Highway system authorizes the State to take certain actions regarding the road.[2] The effectiveness of the highway being designated as part of the Federal-Aid Highway system in granting the State jurisdiction over the design of the highway to the exclusion of the County's duties and responsibilities is

---

[2] *See* Federal-Aid Highways Act, HRS ch. 264, pt. II, §§ 264-21 et seq. (1968).

uncertain.[3] The possibility of State involvement does not dispel the question of the County's culpability raised by the preceding facts.

The record does indicate that jurisdiction over the highway was transferred to the State on July 1, 1969, but it is silent on the substance of the responsibilities, control and authority given by the County, if any, to the State. The substantive provisions of the document transferring jurisdiction to the State are essential to establish the extent of the authority and control relinquished by the County. HRS §§ 265-1 and 265-2. The absence of this clearly material factual evidence leaves the issue of the County's authority and control over the highway unresolved.

Even if the transfer of jurisdiction effectively granted the State sole authority and control over the highway the County may not prevail on its motion. The accident occurred approximately 14 months after the effective date of transfer. Generally, the State's liability for defects and dangerous conditions which existed on the road prior to and which continue after the transfer is not absolute. The State has a reasonable time after the transfer to discover and remedy unsafe conditions before any liability for the condition will attach. *City of Decatur v. Gilliam*, 133 So. 25 (Ala. 1931). 19 McQuillin, Municipal Corporations (3rd ed.) § 54.30, states that "[t]he duty of a city with respect to streets in the annexed area . . . is the same as the duty owed with respect to other streets in the city. But the municipality is allowed a reasonable time in which to discover and remedy unsafe conditions; thereafter liability will attach." (Footnotes omitted.) The

---

[3] The County has the power ". . . to open, construct, maintain, and close up" public highways other than those under the jurisdiction of the department of transportation. HRS §§ 61-2(3), 264-1, 265-1. Although the Federal-Aid Highways Act grants the director of transportation the duty to designate a system of highways in the State "upon which federal-aid funds may or are to be expended . . .", it does not give the director substantial control of a highway until appropriations are made by the legislature for the construction or reconstruction of a highway. HRS §§ 264-21, -23, -28, -31. The designation of the highway as part of the Federal-Aid Highway system does not conclusively confer jurisdiction of the highway in the State department of transportation.

question of whether, under the circumstances of this case, 14 months was a reasonable time within which the State should have discovered and remedied the dangerous condition of the road is one upon which reasonable persons may differ, and thus, for a finder of fact to decide upon careful deliberation of the evidence presented at trial. *Young v. Price*, 48 Haw. 22, 395 P.2d 365 (1964).

The County remains potentially liable during this reasonable period. Its liability turns on the questions of whether it breached a duty owed to the plaintiffs and whether such a breach was a proximate cause of the plaintiffs' injuries. *Hargis v. Dearborn Heights*, 34 Mich. App. 594, 192 N.W.2d 44 (1971). As the Court of Appeals of Michigan succinctly stated,

> Whether [the] death was caused by the negligence of the County [transferor of jurisdiction] or of the City [transferee], or of both, or neither was a jury question. In resolving the causation question the time interval between the transfer of jurisdiction and the accident was a factor to be considered, but the passage of time did not necessarily break the chain of causation. [*Id.* at 601, 192 N.W.2d at 49]

It is clear that even if the record shows the transfer of jurisdiction effectively granted the State sole authority and control over the highway, such a transfer does not bar the County's liability as a matter of law.

For the reasons given we are of the opinion that the trial court erred in granting County's motion for summary judgment on plaintiffs' complaint and State's crossclaim.

### III. IS THE STATE OF HAWAII EXEMPTED FROM LIABILITY AS A MATTER OF LAW FOR THE DESIGN OF THE HIGHWAY HERE IN QUESTION UNDER THE DISCRETIONARY FUNCTION EXCEPTION TO THE STATE TORT LIABILITY ACT, HRS § 662-15(1)?

Plaintiffs asserted that the State ". . . negligently designed, constructed, maintained and inspected and/or [is] otherwise responsible for the road, highway and areas adjacent thereto in the vicinity of where the . . . accident oc-

curred." In its motion for partial summary judgment on the claim for negligent design, the State contended the record shows ". . . that as a matter of law, there can be no active negligence and no liability on the part of movant as to Plaintiffs or . . . County of Hawaii relative to the design and planning of State highways, and the movant is entitled to judgment as a matter of law." The State argued that under the planning-operational distinction adopted in *Rogers v. State, infra*, which equated discretionary functions to planning level conduct and non-discretionary functions to operational level conduct, any act or omission involving the design of a highway would always fall on the planning side of the dichotomy and thus be exempt from liability as discretionary. The trial court adopted this argument in granting the State partial summary judgment and ordering ". . . that the State of Hawaii cannot be found liable for damages proximately caused by negligently designed roads, highways, and areas adjacent thereto and that the State of Hawaii cannot be otherwise responsible in tort for damages proximately caused by the design, redesign, failure to design, failure to redesign, and negligent design of its roads, highways, and areas adjacent thereto."

In reviewing the correctness of the circuit court's order we begin with the State's general duty to keep its highways in reasonably safe condition. *Levy v. Kimball, supra; Ikene v. Maruo*, 54 Haw. 548, 511 P.2d 1087 (1973); *Struzik v. City and County*, 50 Haw. 241, 437 P.2d 880 (1968). This includes the duty to design the highway to be safe for travel by people exercising ordinary care.[4] *Ikene v. Maruo, supra* at 550, 511 P.2d at 1089; *Rogers v. State*, 51 Haw. 293, 459 P.2d 378 (1969); *see Mullins v. Wayne County*, 16 Mich. App. 365, 168

---

[4] In *McKenna v. Volkswagenwerk*, 57 Haw. 460, 558 P.2d 1018 (1977), we dealt with the liability of the City and County for injuries resulting from the unsafe condition of the shoulder of a highway. We said that the question whether the unsafe condition of the shoulder was a proximate cause of an accident, despite the fact that there may have been negligence in the operation of a vehicle on the shoulder, depended upon whether the City and County should have foreseen that a car might be negligently driven so as to create, in combination with the unsafe condition of the shoulder, the

N.W.2d 246 (1969). Where the design of the highway is defective or becomes inadequate the State must either warn the users of the highway of the danger or correct it. *Rogers v. State, supra; Levy v. Kimball, supra; Cabral v. City and County*, 32 Haw. 872 (1933); *see Hargis v. Dearborn Heights, supra.*

The record of this case indicates that several material facts are at issue when applying the law above. They include the State's denial of plaintiffs' allegation that it initially designed the road and the absence of any indication that the State took any action to warn of or correct the hazardous condition. There is also a lack of showing in the record that the design of the highway was safe for travel by drivers exercising ordinary care or that plaintiffs were unlawfully speeding or otherwise not exercising ordinary care.

In considering the State's contention that HRS § 662-15(1) exempts it from liability for the design of the highway it is appropriate to note that the State Tort Liability Act should be liberally construed to effectuate its purpose to compensate the victims of negligent conduct of state officials and employees in the same manner and to the same extent as a private person in like circumstances. *Rogers v. State, supra.*

In *Rogers v. State, supra,* this court applied the planning level-operational level distinction in holding the State's negligence in placing road signs and stripings was not exempt from liability as discretionary functions. In reaching its decision the court reviewed cases interpreting the same exemption under the Federal Tort Claims Act.[5] In conclusion the court noted:

---

hazard which resulted. In the posture of the case, the negligence of the City and County, in failing to maintain the shoulder in a safe condition as required by statute, was considered established. We had no occasion to consider whether maintenance of the shoulder to be safe for travel by people exercising ordinary care would have fulfilled the statutory duty. Thus, whether or not the duty of the State in the design of a highway is subject to the same test as the duty of a county in the maintenance of a highway, *McKenna* does not provide a definition of that duty.

[5] 28 U.S.C.A. § 2680(a).

None of the cases mentioned above gave a precise definition as to what is meant by operational level acts. However, we may draw from the decisions in those cases, and others involving the discretionary function exception, a conclusion that operational level acts are those which concern routine, everyday matters, not requiring evaluation of broad policy factors. [Citation omitted.]

Here, such matters as the kinds of road signs to place and where to place them, and which center line stripings to repaint and when to repaint them, did not require evaluation of policies but involved implementation of decisions made in everyday operation of governmental affairs. Consequently, the circuit court did not err in holding that the State's negligence in this case did not come within the discretionary function exception. [*Id.* at 298, 459 P.2d at 381-82]

Although the use of the planning-operational nomenclature may not be helpful in and of itself, the court recognized the primary factor in determining whether certain activities should be considered discretionary functions, that is, whether the decision at issue involved the evaluation of broad policy factors.

The purpose of the test is to protect the decision-making processes of state officials and employees which require the evaluation of broad public policies. *Dalehite v. United States,* 346 U.S. 15, 34 (1953); *Coates v. United States,* 181 F.2d 816 (8th Cir. 1950); *Swanson v. United States,* 229 F.Supp. 217 (N.D.Ca.S.D. 1964); *see Weiss v. Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409 (1960). The exception makes clear that the act is not intended to provide a vehicle to review policy decisions by state officials or employees in the form of a negligence suit. This rule recognizes the separate powers and functions of the legislative and executive branches of state government and protects them from any attempted disburbance through the courts.

However, it is clear that increasing the emphasis on protecting the State from liability for broad policy decisions by its officials or employees decreases the number of claimants

who will be compensated for injuries. This illustrates the tension between the discretionary function exception and the primary policy of the act to compensate victims of negligent conduct of state officials and employees. With reference to the latter, we have noted that it would be inconsistent with the liberal construction of the act to effectuate its purpose to limit the scope of the act with refinements. *Rogers v. State, supra,* 51 Haw. at 296, 459 P.2d at 381. The ultimate objective in interpreting the act is to maximize each interest in its application to individual cases.

The effect of the circuit court's order is to hold the designing of a highway always involves the evaluation of broad policy factors. This places total emphasis on protecting the State to the exclusion of those who sustain injuries proximately caused by the negligent design of a highway. Although broad policy considerations may be a factor in certain aspects of highway design we do not think the circuit court's generalization is correct. For certain, there are decisions made by officials which require evaluation of broad policy factors by their very nature, *e.g.* a decision to purchase certain aircraft,[6] a decision to activate an airbase,[7] or a decision not to build a prison.[8] However, we are of the opinion that the decisions made in designing a highway do not always fall in this category. A curve may be placed in a road to simply get around an obstacle. In this situation further facts must be adduced on the record to show that the decision to include the curve or other design feature involved the evaluation of broad policy factors before the court can decide that the discretionary function exception applies. The United States Court of Appeals for the Ninth Circuit expressed this proposition in *United States v. Hunsucker, supra* note 7, at 103:

> Where discretion ends and actionable negligence begins for the purpose of this exception cannot be defined without reference to the factual situations in which the question of applicability of the exception has arisen.

---

[6] Moyer v. Martin Marietta Corp., 481 F.2d 585 (5th Cir. 1973).

[7] United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962).

[8] Upchurch v. State, 51 Haw. 150, 454 P.2d 112 (1969).

The State has cited *Mahler v. United States*, 306 F.2d 713 (3rd Cir. 1962), *cert. denied* 371 U.S. 293 (1962), in support of its contention that highway design is a discretionary function as a matter of law. The case does not stand for that proposition. In deciding that the United States government's participation in formulation and approval of plans for a Federal-Aid Highway was within the discretionary function exception, the Court of Appeals for the Third Circuit pointed to specific considerations that the Secretary of Commerce relied upon in deciding to approve the plans and specifications for the project. The fact that the Court of Appeals considered what was involved in the decision of the Secretary of Commerce belies the State's contention that the design of highways is a discretionary function as a matter of law.

The legislative policy to compensate the victims of negligent conduct by State officials and employees in the same manner and to the same extent as a private person in like circumstances weighs heavily against adopting the rule asserted by the State. The State's interest in protecting public policy decisions does not require a prophylactic rule in this case. It is sufficient to apply the exception when the record shows that broad policy factors were involved in reaching the allegedly negligent decision.

At this point we note that this case presents important questions of first impression in this jurisdiction. We noted in *State v. Zimring*, 52 Haw. 472, 476, 479 P.2d 202, 204-05 (1970) citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948),

> . . . that no conclusion in such case should be rested on an indefinite factual foundation; that summary procedures present a treacherous record for deciding issues of far-flung import; and that it is part of good judicial administration to withhold decision of the ultimate questions in the case until the record presents a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts.

It is clear that important public issues must be resolved in deciding the liability, if any, of the State for the hazardous design of the highway. A proper resolution of the issues can

only be reached upon consideration of all the evidence presented at trial.

For the reasons stated above we hold that the circuit court erred in granting the State's motion for partial summary judgment.

*Christopher P. McKenzie (Gould & McKenzie* of counsel) for plaintiffs-appellants.

*Stephen G. Bess,* Assistant Corporation Counsel, for defendant-appellee County of Hawaii.

*William W. Milks,* Deputy Attorney General, for defendant-appellee State of Hawaii.