[No. 40593-4-I.  Division One.  November 30, 1998.]
SHERYL OLSON, ET AL., *Appellants*, v. THE CITY OF
BELLEVUE, ET AL., *Defendants*, KING COUNTY, *Respondent*.

*Kurt Lichtenberg* and *David A. Kohles*; and *William C. Smart* of *Keller Rohrback*, for appellants.

*Mark R. Johnsen* of *Karr Tuttle Campbell*, for respondent.

KENNEDY, C.J. — Plaintiffs appeal the trial court's summary judgment dismissal of King County from their negligent roadway design and maintenance complaint, contending that the trial court erred in concluding that King County's transfer of jurisdiction over the roadway to the City of Bellevue—which occurred almost two years before Plaintiffs' accident—shielded King County, as a matter of law, from liability for its alleged pretransfer negligence in designing and maintaining the roadway.

Where, as here, a municipality annexes a roadway from another municipality, the annexed municipality's potential liability for any unsafe conditions in the roadway ends after the annexing municipality has been afforded a reasonable opportunity to discover and remedy the unsafe conditions. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable juror could conclude only that Bellevue had been afforded a reasonable opportunity to discover and remedy the alleged unsafe conditions in the roadway before Plaintiffs' accident. Therefore, the trial court correctly concluded that King County was entitled to summary judgment dismissal from Plaintiffs' complaint as a matter of law. Accordingly, we affirm.

## STATEMENT OF FACTS

Before the City of Bellevue redesigned the 17600 block of Southeast 60th Street in May 1993, the roadway passed over a hill and immediately jogged around a large rock. The roadway's layout obscured the "jog" from drivers approaching from the west, and created horizontal and vertical curves in the roadway.

The 17600 block of Southeast 60th Street was not designed by a municipality, but evolved as a country road over time. In 1936, King County formally established and maintained the roadway then called "Graf Road" as part of King County's road system. King County later changed the name of the roadway to Southeast 60th Street. In 1989, King County installed a "reverse turn-right" sign and a 30 mph advisory speed sign just before the 17600 block "jog."

On June 28, 1990, the City of Bellevue annexed the territory known as "Cougar Glen," which includes Southeast 60th Street between the 16800 and 18000 blocks. King County orally reported to Bellevue that "there were no accidents that they have record of on the section of 60th throughout the area of concern." Clerk's Papers at 109 (Dep. of William Haro).

Shortly after annexing the roadway, Bellevue concen-

trated law enforcement efforts on the road. In February 1991, Bellevue performed a "ball bank" test on the "jog." From the test, Bellevue concluded that 35 mph, the posted speed limit on the road, was a safe speed and removed King County's 30 mph advisory speed sign. In March 1991, Bellevue conducted a speed study. In May 1991, Bellevue installed a new speed limit sign and replaced King County's warning signs with different types of warning signs. In the summer of 1991, Bellevue videotaped the roadway. In February 1992, Bellevue relocated the speed limit sign. In February 1992, Bellevue installed road delineators. And in March 1992, Bellevue replaced the centerline markers.

On June 14, 1992, John Hiles crested the 17600 block hill and lost control of his car. The car left the roadway, rolled, and crashed into a ditch. Hiles' passengers—Sheryl Olson, Debi Butler, and Jill Butler—suffered various injuries. Sheryl Olson, Sheryl Olson's parents, Debi Butler, Jill Butler, and Jill and Debi Butler's parents ("Plaintiffs") sued King County, the City of Bellevue, and Hiles.[1] Plaintiffs alleged, inter alia, that Bellevue and King County "failed to properly warn the driving public of the dangers; failed to take corrective actions to reduce the effect of the dangers; and failed to properly maintain the roadway and make necessary repairs to eliminate the dangerous conditions." Clerk's Papers at 6.[2]

King County moved for summary judgment dismissal from Plaintiffs' complaint, alleging that "King County has no liability for accidents on a road after ownership, jurisdiction and maintenance authority has been transferred to another municipality." Clerk's Papers at 35. Plaintiffs moved for a continuance that the trial court denied. The trial court then granted King County's motion, dismissing

---

[1]Plaintiffs' suit was consolidated with a suit brought by the parents of Chad Fraser. On October 10, 1992, Chad Fraser was killed in a single-car accident near the same location as Plaintiffs' accident. The Frasers elected not to join Plaintiffs' appeal.

[2]Shortly before trial, Plaintiffs settled with the City of Bellevue and Hiles.

King County from Plaintiffs' complaint with prejudice. Plaintiffs appeal.

## DISCUSSION

I. To what extent, if any, does a municipality remain liable for unsafe conditions in roadway after the roadway has been annexed by another municipality?

In general, a "county has a duty to maintain *its* roadways in a reasonably safe condition for ordinary travel by persons using them in a proper manner." *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995) (emphasis added). And in this case, it is undisputed that King County transferred sole control and authority over the roadway to Bellevue almost two years before Plaintiffs' accident. Nonetheless, Plaintiffs maintain that King County should remain liable for its pretransfer negligence in designing and maintaining the roadway. Therefore, as an initial matter, this court must determine the extent to which, if any, a municipality remains liable for unsafe conditions in a roadway after the roadway has been annexed by another municipality.

Although this is a case of first impression in Washington, the Hawaii Supreme Court addressed this issue in *Breed v. Shaner*, 57 Haw. 656, 562 P.2d 436 (1977). In that case, the county transferred jurisdiction over the Mamalahoa Highway to the State of Hawaii. 562 P.2d at 438. Fourteen months later, Magdalena Breed suffered injuries in a rollover accident on the highway. *Id.* at 440. In addition to suing the state, Breed sued the county, alleging that it "negligently designed, constructed, maintained and inspected and/or [is] otherwise responsible for the road, highway and areas adjacent thereto in the vicinity of where the . . . accident occurred." *Id.* at 439. The trial court granted the county's motion for summary judgment dismissal from Breed's complaint, "apparently accept[ing] the County's contention that the transfer of jurisdiction of the highway to the State . . . established a bar for the County from any liability for design, construction, maintenance,

inspection or other responsibility it may have had for the highway." *Id.*

On appeal, the Hawaii Supreme Court concluded that the county remained potentially liable until the State of Hawaii had been afforded a reasonable opportunity to discover and remedy any unsafe conditions in the roadway:

> Even if the transfer of jurisdiction effectively granted the State sole authority and control over the highway the County may not prevail on its motion. The accident occurred approximately 14 months after the effective date of transfer. Generally, the State's liability for defects and dangerous conditions which existed on the road prior to and which continue after the transfer is not absolute. The State has a reasonable time after the transfer to discover and remedy unsafe conditions before any liability for the condition will attach. *City of Decatur v. Gilliam*, 222 Ala. 377, 133 So. 25 (1931) . . . . The question of whether, under the circumstances of this case, 14 months was a reasonable time within which the State should have discovered and remedied the dangerous condition of the road is one upon which reasonable persons may differ, and thus, for a finder of fact to decide upon careful deliberation of the evidence presented at trial. *Young v. Price*, 48 Haw. 22, 395 P.2d 365 (1964).

> The County remains potentially liable during this reasonable period. Its liability turns on the questions of whether it breached a duty owed to the plaintiffs and whether such a breach was a proximate cause of the plaintiffs' injuries[:]

> Whether [the] death was caused by the negligence of the County [transferor of jurisdiction] or of the City [transferee], or of both, or neither was [a] jury question. In resolving the causation question the time interval between the transfer of jurisdiction and the accident was a factor to be considered, but the passage of time did not necessarily break the chain of causation.

> [*Hargis v. Dearborn Heights*, 34 Mich. App. 594, 192 N.W.2d 44 (1971).]

> It is clear that even if the record shows the transfer of jurisdiction effectively granted the State sole authority and control over the highway, such a transfer does not bar the County's liability as a matter of law.

*Id.* at 440-41. Therefore, the court reversed the trial court and remanded for trial. *Id.* at 444.

King County contends that the *Breed* rule states the annexed municipality's duty too broadly. Instead, King County—relying on general principles of tort law—proposes a rule in which the annexed municipality's liability for unsafe conditions in a roadway annexed by another municipality ends when the annexed municipality discloses all known latent defects with the roadway, *or* the annexing municipality has been afforded a reasonable opportunity to discover and remedy any unsafe conditions in the roadway:

> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> (a) the vendee does not know or have reason to know of the condition or the risk involved, and
>
> (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.
>
> (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

RESTATEMENT (SECOND) OF TORTS § 353 (1965).[3] King County's proposed rule, however, could lead to most incongruous results.

---

[3]RESTATEMENT (SECOND) OF TORTS section 353 "applies to any transfer of ownership and possession of land, whether by gift, disseisin, taking by the state under eminent domain, succession, or otherwise." RESTATEMENT (SECOND) OF TORTS § 354 cmt. a. (1965).

Under the law of municipal corporations, an annexing municipality's liability for unsafe conditions in a newly-annexed roadway does not commence until it has been afforded a reasonable opportunity to discover and remedy any unsafe conditions:

If a territory is annexed to a city, public highways in the territory become streets of the municipality, and the municipality may be liable in case of negligence. The duty of a city with respect to streets in the annexed area, at least after a reasonable time has elapsed, is the same as the duty owed with respect to other streets in the city. But the municipality is allowed a reasonable time in which to discover and remedy unsafe conditions; after that, liability will attach.

19 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 54.30, at 136 (Beth A. Buday et al. eds., 3d ed., rev. vol. 1994) (footnotes omitted), *cited in Breed*, 562 P.2d at 438; *accord Bush v. City of Gainesville*, 105 Ga. App. 381, 124 S.E.2d 667, 670 (1962) ("As to defects existing in the highway at the time of annexation, the city does not become chargeable with liability until it has discovered them, or, in the exercise of ordinary and reasonable diligence, should have discovered them, and until it has then had a reasonable opportunity to remedy them.") (citation omitted). Therefore, under King County's proposed rule, a gap in liability could result, i.e., neither the annexed municipality nor the annexing municipality would be liable for injuries caused by unsafe conditions in the roadway between the time the annexed municipality discloses all known latent unsafe conditions in the roadway and such time that the annexing municipality has been afforded a reasonable opportunity to remedy the unsafe conditions.

Granted, King County's proposed rule is attractive to the extent that it encourages annexed municipalities to disclose known latent unsafe conditions in annexed roadways, which could, in turn, reduce the number of accidents on Washington's roadways. But the *Breed* rule also encourages annexed municipalities to disclose all unsafe conditions in annexed roadways. That is, because a rational trier

of fact would presumably find a "shorter" reasonable opportunity to discover and remedy any unsafe conditions if the annexed municipality disclosed the unsafe conditions to the annexing municipality, the annexed municipality would have an incentive to disclose any known latent unsafe conditions to limit its potential posttransfer liability.

Plaintiffs, on the other hand, contend that the *Breed* rule states the annexed municipality's duty too narrowly. Instead, they argue that an annexed municipality should remain liable for its pretransfer negligence in design, redesign, or maintenance of the roadway—regardless of whether the annexing municipality has been afforded a reasonable opportunity to remedy the unsafe conditions. In support of this argument, Plaintiffs cite to the Michigan Supreme Court's decision in *Killeen v. Department of Transp.*, 432 Mich. 1, 438 N.W.2d 233 (1989).

In *Killeen*, the Michigan Supreme Court held that an annexed municipality remained liable for its pretransfer negligent design or construction of a highway after the annexing municipality had assumed jurisdiction over the highway:

> [W]hen the highway department assumes jurisdiction of a county road, and redesigns and reconstructs the road, and then returns jurisdiction to the county road commission, the highway department is subject to liability for injuries sustained in accidents caused by failures in design or construction while it had jurisdiction, although the accident does not occur until after the highway department has relinquished jurisdiction.

*Killeen*, 438 N.W.2d at 240-41. But *Killeen* is easily distinguishable from this case—and probably most other cases—because the *Killeen* court could easily attribute the alleged design defects in the roadway to one defendant: "The design and construction 'failures' alleged in the complaints occurred if at all—they could only have occurred—while the highway department had jurisdiction." *Id.* at 238. Indeed, in most situations (as in this case), deciphering between design and maintenance would be difficult at best and arbitrary at worst.

In addition, under Plaintiffs' proposed rule, an annexed municipality's potential liability for its pretransfer negligence in designing, redesigning, or maintaining a roadway would continue indefinitely. Besides creating possible disputes between annexed and annexing municipalities over the proper management of a roadway, "[t]o hold two governmental units responsible for correcting design or construction defects could result in confusion and inefficiency." *Potes v. Department of State Highways*, 128 Mich. App. 765, 341 N.W.2d 210, 213 (1983). Indeed, such a rule could lead to more finger-pointing between municipalities, and less roadway repair and improvement.

■ For all of the foregoing reasons, we adopt the Hawaii Supreme Court's reasoning in *Breed v. Shaner*, 562 P.2d 436, and hold as follows: Where a municipality annexes a roadway from another municipality, the annexed municipality's potential liability for any unsafe conditions in the roadway ends after the annexing municipality has been afforded a reasonable opportunity to discover and remedy the unsafe conditions.

II.  Viewing the evidence in the light most favorable to Plaintiffs, does a genuine issue of material fact exist regarding whether the City of Bellevue had been afforded reasonable opportunity to discover and remedy any unsafe conditions in the roadway, thereby precluding summary judgment?

Plaintiffs contend that summary judgment was inappropriate because a genuine issue of material fact exists regarding whether Bellevue would have discovered the unsafe "jog" in the roadway before Plaintiffs' accident if King County had disclosed the roadway's accident history to Bellevue when it transferred jurisdiction. King County contends that, based on the evidence presented, a reasonable trier of fact could conclude only that Bellevue had been afforded a reasonable opportunity to discover and remedy the alleged unsafe conditions in the roadway before Plaintiffs' accident, thereby entitling King County to dismissal from Plaintiffs' complaint as a matter of law. We agree with King County.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

In this case, Bellevue annexed the roadway on June 28, 1990. Between June 28, 1990, and Plaintiffs' accident on June 14, 1992, Bellevue conducted a "ball bank" test and speed study, removed an advisory speed limit sign, installed a new speed limit sign, replaced King County's warning signs with different types of warning signs, videotaped the roadway, relocated a speed limit sign, installed road delineators, and replaced the centerline markers. Viewing this evidence in the light most favorable to Plaintiffs, notwithstanding King County's alleged failure to disclose material information about the roadway's accident history, a reasonable trier of fact could conclude only that Bellevue had been afforded a reasonable opportunity to discover and remedy the alleged unsafe conditions in the roadway before Plaintiffs' accident. Therefore, the trial court properly granted King County's motion for summary judgment dismissal from Plaintiffs' complaint.

III.   Did the trial court abuse its discretion by denying Plaintiffs' motion for a continuance under CR 56(f)?

■ Plaintiffs also contend that the trial court erred in refusing to grant a continuance under CR 56(f) to allow for further discovery:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to

permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

CR 56(f).

Under CR 56(f), a trial court may properly deny a motion for a continuance if: (1) the requesting party offers no good reason for the delay in obtaining the evidence sought, (2) the requesting party fails to indicate what evidence would be established through more discovery, or (3) the evidence sought fails to raise an issue of material fact. *Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union*, 77 Wn. App. 33, 49, 888 P.2d 1196 (1995) (citation omitted).

Plaintiffs requested a continuance to obtain deposition transcripts pertinent to King County's knowledge of accidents in the 17600 block of Southeast 60th Street. But as discussed above, notwithstanding King County's alleged failure to disclose material information about the roadway's accident history, a reasonable trier of fact could conclude only that Bellevue had been afforded a reasonable opportunity to discover and remedy the alleged unsafe conditions in the roadway before Plaintiffs' accident. Therefore, King County's knowledge of accidents in the 17600 block of Southeast 60th Street was not material to King County's motion for summary judgment, and the trial court did not err in denying Plaintiffs' motion for a continuance.

IV. Is Plaintiffs' appeal frivolous, thereby entitling King County to attorney fees on appeal?

■■ King County requests attorney fees under RAP 18.9 and CR 11 for defending an appeal that it characterizes as frivolous. "An appeal is frivolous when, considering the record in its entirety and resolving all doubts in favor of the appellant, no debatable issues are presented upon which reasonable minds might differ, *i.e.*, 'it is devoid of merit that no reasonable possibility of reversal exists.' " *Brin v. Stutzman*, 89 Wn. App. 809, 828, 951 P.2d 291 (1998) (citation omitted). "Cases of first impression are not frivolous if they present debatable issues of substantial public

importance." *Cary v. Allstate Ins. Co.*, 78 Wn. App. 434, 440-41, 897 P.2d 409 (1995), *aff'd*, 130 Wn.2d 335, 922 P.2d 1335 (1996).

This is a case of first impression that presents debatable issues of substantial public importance. And Plaintiffs present a reasonable argument that King County should not be shielded from liability for the alleged unsafe conditions in the roadway as a matter of law. Therefore, although we reject Plaintiffs' appeal, their appeal cannot be characterized as frivolous. Accordingly, we reject King County's request for attorney fees on appeal.

Affirmed.

WEBSTER and BAKER, JJ., concur.

Review denied at 137 Wn.2d 1034 (1999).