VIRGINIA L. GIBBONS, Plaintiff,

v.

**AMERICAN SAMOA GOVERNMENT,
and ROES 1 through 10, inclusive, Defendants.**

High Court of American Samoa .
Trial Division

CA No. 128-93

April 26, 1999

Before KRUSE, Chief Justice, TUA`OLO, Chief Associate Judge, AFUOLA, Associate Judge.

Counsel: For Plaintiff, Aumoeualogo S. Salanoa, William H. Reardon
　　　　 For Defendants, Fiti A. Sunia, Assistant Attorney General

OPINION AND ORDER

## Introduction

On February 16, 1992, plaintiff Virginia Gibbons ("Gibbons"), was sexually assaulted by Maosi Fuala`au ("Fuala`au") after he escaped from the American Samoa Government Correctional Facility in Tafuna ("Correctional Facility") where he was serving a prison sentence for the earlier sexual assault of another Government Housing tenant. Gibbons brought suit for tort damages under two theories of liability. She alleges the American Samoa Government ("ASG") breached its duty of care in its capacity as prison custodian and breached its duty of care in its capacity as her landlord.

Gibbons and ASG each brought motions for summary judgment prior to trial, both of which were denied (on October 8, 1997 and July 20, 1998, respectively). On January 5, 1998, Gibbons made a motion to bifurcate trial proceedings regarding the issues of liability and damages, and that motion was granted on February 2, 1998. Accordingly, trial on the issue of ASG's liability took place from July 27 to July 29, 1998, with counsel present for both parties.

## Facts

At the time of the attack, Gibbons was a contract specialist hired to work for ASG. She lived in the Government Housing Tract in Tafuna ("Government Housing") which is owned and operated by ASG and which is where ASG houses most of its contract employees. On February 16, 1992 at about 1:00 a.m., Fuala`au cut through the "rat wire" and screen in the living room of Gibbons' house. He sexually assaulted Gibbons throughout a period of several hours and stole a VCR machine as he left the house.

Only hours before the attack, Fuala`au had escaped from the Correctional Facility where he was serving a 5-year term for the rape of Phyllis McCullum, another former Government Housing resident. Officers at the Correctional Facility discovered Fuala`au missing during

a bed-check at about 1:00 a.m. Officers looked for him at the Correctional Facility and, at about 2:30 a.m., began searching the Government Housing complex for him. He was found wandering toward his aunt's house in the Government Housing complex just before 4:00 am that morning. On July 16, 1992, Fuala`au admitted to raping Gibbons, and the court sentenced Fuala`au to 60 years in prison.

## Discussion

For each of Gibbons' two theories for recovery—ASG as custodian of the Correctional Facility and as landlord of the Government Housing complex—ASG both denies liability and claims governmental tort immunity. We will examine each of these theories in turn, first determining whether the government is immune from tort liability and then, if necessary, proceeding on to assess whether ASG is in fact liable for Gibbons' injuries.

### A. ASG as Custodian of the Correctional Facility

#### 1. Governmental Tort Immunity

Governmental immunity was originally established at common law to shield the king from the imputation of wrongdoing but, not surprisingly, this concept has largely been abolished in modern times. In American Samoa, the doctrine has been supplanted by the Government Tort Liability Act, A.S.C.A. § 43.1203. Under that statute, ASG has voluntarily waived immunity for most tortious acts of misfeasance and nonfeasance, and retains its common law shield against liability only in certain particular circumstances. In this case, the exception which ASG claims should be applied may be found at A.S.C.A. § 43.1203(b)(2), which retains governmental immunity for "any claim based upon the exercise or performance of, or the failure to exercise or perform, a discretionary function or duty of an officer or employee." The rationale for this exception, of course, is to prevent judicial second-guessing of decisions which are properly within the purview of the executive.

With only this very basic statutory language to serve as a starting point, then, it is therefore left to the courts to determine what sorts of activities properly constitute "discretionary functions" within the meaning of the statute. Fortunately, this jurisdiction is not without precedent on the issue. In the seminal case of *Savage v. American Samoa Government*, 1 A.S.R.2d 102, 105-06 (Trial Div. 1983), this court drew a distinction between activity that occurs at the executive or planning level and that which occurs at the "operational" level, holding that the former was immune under the discretionary function exception, while the latter remained subject to potential tort liability. Citing *Hansen v. City of St. Paul*, 214 N.W.2d 346 (Minn. 1974). *See also Breed v. Shaner*, 562

P.2d 436, 442 (Haw. 1977) (holding. the state liable for activities that were operational in nature and which did not involve "broad policy factors").

■ Were we to confine our discussion to the *Savage* case and apply the traditional "planning level" versus "operational level" distinction, the day-to-day decisions involved with running a prison presumably would be found to be operational in nature and would therefore lose their cloak of governmental immunity. However, after reviewing recent developments in this area of the law in other jurisdictions, we are persuaded to reject the rigidity of the *Savage* holding with respect to this issue and instead follow the somewhat more flexible approach outlined by the United States Supreme Court in *United States v. Gaubert*, 499 U.S. 315 (1991).

In interpreting the discretionary function exception of the Federal Tort Claims Act—a provision nearly identical to A S.C.A. § 43.1203(b)(2)— the *Gaubert* court expressly rejected the notion that activities at the operational level by definition could never involve discretion:

> A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policy-making or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* at 325, *quoting United States v. Yang Airlines*, 467 U.S. 797 (1984). In our view, the Supreme Court's approach comports much more closely with the plain language of the statute, requiring a straightforward inquiry into whether the conduct in question involved "discretion" of the sort which the Act was designed to protect. As the Court stated in *Gaubert*, "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.*

■ With this framework in mind, we now turn to the specific facts of this case regarding the government's custodianship of the Correctional Facility. As the ASG correctly points out, certain decisions by prison administrators, alleged to be negligent by Gibbons, did indeed involve elements of discretion and are properly immune from tort liability under A.S.C.A. § 43.1203(b)(2). These include, for example, the critical decision to move Fuala'au to the lower-security Juvenile Unit, as well as major administrative decisions such as how often bed checks would be conducted or precisely how many lights and guards should have been posted in which positions around the prison grounds. Although they

occur at the "operational level," these matters involve basic issues of resource allocation and require close judgment calls which are best left to those trained in the field of penal administration. Within reason, prison officials must be given appropriate leeway to run the Correctional Facility as they deem to be most effective given their available resources; in short, the court will not seize our inevitable advantage of perfect hindsight to hold such decisions unreasonable after the fact.

■ However, while prison officials are free under A.S.C.A. § 43.1203(b)(2) to use their judgment on most of the daily decisions regarding the administration of the Correctional Facility, there is no discretion involved in ASG's activities—or non-activities, as the case may be—pertaining to basic security measures. Most notably, the decision to not close off a hole in the cell wall large enough for an inmate to escape through does *not* require the exercise of discretion; failure to secure the perimeter gate presumably does not involve a decision at all, much less one requiring any degree of judgment; and generally maintaining the Correctional Facility in such a sorry state that even the warden referred to security as "a joke" cannot be shielded from immunity as the product of governmental discretion. Unlike those decisions which involve some element of judgment, these most basic acts and omissions require none, and they therefore are not exempt from liability under the "discretionary function" exception to the Government Tort Liability Act.

As a result of this analysis, then, certain ASG decisions held to be immune may therefore not be considered in the following discussion of liability (e.g., the decision regarding Fuala`au's assignment to the Juvenile Unit, bed check procedures, guard assignments, etc.). Any finding of negligence, therefore, must be predicated on the remaining facts which involve non-discretionary activities.

2. Liability as Prison Custodian

■ Like any action for negligence, to demonstrate liability in this case plaintiff must prove the standard elements of duty, breach, and cause. The first element, duty, is a straightforward question of law on which there is direct precedent in this jurisdiction. In *Rakhshan v. Tuilefano,* 18 A.S.R.2d 46, 48 (Trial Div. 1991), the court explicitly identified ASG's legal obligation to "protect fellow inmates and members of the general public from those whom it has taken within its custody." Other courts have come to the similar conclusion that, under appropriate circumstances, the government may be held liable for harm done by inmates negligently permitted to escape. *See generally* 44 A.L.R.3d 899, 901, LIABILITY—HARM BY ESCAPED PRISONER; *Webb v. State,* 91 So.2d 156 (La. App. 1956).

■ Having established that ASG owed Gibbons a duty, we now turn to the more difficult and fact-intensive issues which tend to be determinative in prison escapee cases. As addressed above in the discussion of governmental immunity, any finding of breach must be the result of those acts which were non-discretionary in nature. In reviewing that subset of facts, we hold that ASG was indeed negligent in its operation of the Correctional Facility. Notwithstanding the fact that the Correctional Facility had been ravaged by Hurricane Val a few months prior to the escape, we find that the failure to secure the walls and fencing of the prison was unreasonable even under these extraordinary circumstances. Moreover, according to the evidence offered by the warden himself, security had been generally lax even prior to Val's arrival. Inmates negligently had obtained access to alcohol, and Fuala`au himself was intoxicated on the evening in question. Perimeter gates were routinely left unlocked and unguarded. In short, the Correctional Facility's security and escape record historically had been—and continues to be, for that matter—nothing short of abysmal. Even without regard to those decisions involving the discretion of prison officials, ASG breached its duty of care to Gibbons.

■ Despite the finding that ASG breached its duty of care, however, recovery may nevertheless be denied if Gibbons' injuries are not within the scope of the duty breached. *See Frank v. Pitre,* 341 So.2d 1376 (La. 1977); *Green v. State,* 91 So.2d 153 (La. 1956). In this type of case, therefore, the key is not merely that the plaintiff be harmed as a result of the negligence, but also that the injury received should be of the type which the duty exists to prevent. The *Green* case, *supra,* is illustrative. In *Green,* the court denied state liability for the escapee's negligent operation of an automobile since "the breach of the duty and the duty breached were not sufficiently related to the injuries received as to import liability for damage resulting from the breach." 91 So.2d 153, 155. A prison custodian's duty to third parties is not to prevent car accidents incidental to escape, but rather to take reasonable precautions to keep criminals confined so that they may not commit further crimes.

■ Unlike *Green,* though, the specific facts of this case lean heavily toward finding the ASG liable, and we do so find. In those cases which reject finding liability for a prison custodian, the primary reason cited is often the lack of temporal and geographic proximity between the escape and the post-escape injuries. *See Nelson v. Parish of Washington,* 805 F.2d 1236 (5th Cir. 1986) (prison custodian found not liable largely because post-escape crime was committed 13 days after the escape and 750 miles from the jail); *Reid v. State,* 376 So. 2d 977, 978 (La. 1979) (no liability where shooting by escapee occurred 11 days after the escape and 60 miles from the jail). In this case, however, the injuries sustained by Gibbons were inflicted only hours after her attacker's escape, and in the housing complex immediately adjoining the Correctional Facility's

grounds.

Even more importantly, though, upon making his escape Fuala`au proceeded almost immediately to commit the exact same crime—and in the exact same general location—of which he had been convicted three years earlier. The very purpose of his incarceration was to prevent *precisely this type of injury* to innocent third persons such as Virginia Gibbons, and it was clearly foreseeable that the breach of the prison custodian's duty of care could result in such a crime. *See Geiger v. State,* 242 So.2d 606 (La. 1970) (foreseeability that the negligence of the state in permitting prisoner to escape would result in attempted perpetration of crimes against nearby residents is a predicate to liability).

Although the actual crime was different in *Webb v.* State, the court in that case elaborated on the issue of foreseeability:

> An escape is almost always foremost in the mind of a dangerous criminal. It was foreseeable that leaving a dangerous criminal unchecked for hours at night would give him an immediate opportunity to attempt his goal. Also, it was foreseeable that leaving dope and whiskey at his disposal would only increase the probability of an attempted escape.

91 So.2d 156, 162 (La. 1957). Similarly, we find that neglecting to cover huge holes in the Correctional Facility's walls, leaving the perimeter gates unsecured, allowing alcohol to somehow be introduced into the compound, and generally failing to provide reasonable security measures all constituted negligence which could foreseeably have led to the injuries Gibbons ultimately sustained.

## B. ASG as Landlord of the Government Housing Complex

### 1. Governmental Tort Immunity

■ The issue of sovereign immunity is much simpler with respect to this claim than that of prison custodian, as we need not even address the issue of whether this governmental conduct is "discretionary" within the meaning of A.S.C.A. § 43.1203(b)(2). As a landlord, ASG receives a pecuniary benefit from its rental housing operation, and is therefore acting in a proprietary capacity.

In the *Savage* case, *supra,* the court held that the ASG could not avail itself of sovereign immunity when acting in a proprietary capacity, and specifically identified the rental of housing units to its employees as one such activity. 1 A.S.R.2d 102, 106. *See also Baumgardner v. Boston,* 23 N.E.2d 121 (Mass. 1939) (no governmental immunity where the government collected trash for a fee); *Plaza v. City of San Mateo,* 266

P.2d 523 (Cal. 1954) (operation of municipal golf course.found to be proprietary in nature). The ASG derives a direct pecuniary benefit through the collection of rent and, as the *Savage* court further reasoned, it also receives an indirect benefit as it workers "live in the community *for* the *convenience of* the *employer*." *Savage* a*t* 106 (emphasis added). We continue to adhere to *Savage's* holding that ASG's operation of the Government Housing complex in Tafuna is proprietary in nature, and ASG therefore may not hide behind the cloak of governmental tort immunity when acting in this capacity.

## 2. Liability

■ Without the benefit of sovereign immunity, ASG's responsibility to its tenants is the same as that of any other landlord, and the guiding principle in these cases is that "landlords have no duty to protect tenants from criminal attack." *Walls v. Oxford Management Co., Inc.,* 633 A.2d 103, 106. Put another way, "landlords are not insurers that a tenant will be protected at all times. . . . To impose liability over the mere possibility of a crime occurring is folly." *C.S. v. Sophir,* 368 N.W.2d 444, 446-7 (Neb. 1985).

There are important exceptions to this general rule, however. For the instant case, the most significant of these is the principle that liability may be triggered when there exists "clear foreseeability," even if no causal connection exists with respect to a physical defect of the housing premises. *Trentacost v. Brussel,* 412 A.2d 436, 438 (N.J. 1980) (obvious criminal activity in tenant's neighborhood created foreseeability of attack). Gibbons argues, *inter alia,* that the Government Housing complex's proximity to the Correctional Facility, coupled with ASG's knowledge of the prior rape for which Fuala`au was originally incarcerated, created the requisite foreseeability sufficient to impose liability. We disagree.[1]

---

[1] Note that although somewhat related, the two issues of foreseeability in this case are in fact quite distinct. The first, discussed *supra* at pages 10-11 with respect to ASG's liability as prison custodian, looks from the unique perspective of the Correctional Facility officials. In evaluating the issue, we found it to be reasonably foreseeable that this particular inmate—given his own particular criminal history—would rape again if given the chance.

In this new inquiry as to foreseeability, however, we are now called upon to adopt the perspective of ASG as landlord. For these purposes, we examine a different body of evidence altogether: we look not at the history of any given inmate, but rather at the overall history of crime in the Government Housing tract. Foreseeability in this context presents a more difficult hurdle, as Gibbons must demonstrate foreseeability not only that any given escapee would commit a violent crime of this nature,

Those cases which have found foreseeability that a crime would be committed on rental property have typically identified a pattern of crime which includes multiple incidents occurring over a relatively short period of time. In *Nallan v. Helmsley-Spear, Inc.,* for example, foreseeability was established when 107 crimes had been reported in a single apartment building (including 10 against persons) over a 21-month period immediately preceding a shooting there. 407 N.E.2d 451, 519-20 (NY 1980). Similarly, in *Kline v. Massachusetts Avenue Apartment Corp.,* the court recognized "repeated criminal assaults and robberies" on the premises sufficient to give the landlord notice that additional crimes would likely be attempted in the future. 439 F.2d 477, 481 (D.C. Cir. 1970). See *also Flood v. Wisconsin Real* Estate *Inv. Trust, Inc.,* 497 F.Supp. 320 (D.Kan. 1980).

■ In the case at bar, however, Gibbons identified only one significant criminal act at the Government Housing complex: the rape committed by Fuala`au three years prior to her own attack. In *Sophir, supra,* the court was confronted with a similar fact pattern, although the argument for liability was actually much stronger there because the prior assault occurred only two months before the incident at issue in that case. Nevertheless, the court surveyed the relevant caselaw and reached its conclusion:

> No cases were found which impose liability on a landlord based on a *single* prior criminal act perpetrated upon a tenant. . . . Likewise, in the present case there would be no foreseeability, based on one prior assault, upon which to predicate liability.

368 N.W.2d 444, 447 (Neb. 1985) (emphasis in original).

The notion that the Correctional Facility's proximity to the Government Housing complex makes the latter significantly more prone to violent crime is mere speculation; as presented by Gibbons, the evidence itself shows only a single similar incident which had occurred three years earlier, and we find such a history insufficient to create foreseeability. Although we therefore deny liability on this theory under these particular facts, however, ASG is nevertheless strongly encouraged to take any and all steps to make its rental housing operation as safe as possible.

### Order

For the foregoing reasons, ASG is found liable in its capacity as custodian of the Correctional Facility, and not liable in its capacity as

---

but also that an inmate so inclined would escape in the first place and even be given the opportunity to do so.

landlord of the Government Housing complex. As contemplated by our bifurcation order of February 2, 1998, trial on the issue of damages will be set upon appropriate motion.

It is so ordered.